**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
HELENA DIVISION**

DAVID WAYNE BOYLES                                                                              PLAINTIFF

V.                                          2:04CV00006 WRW/HDY

RAY HOBBS *et al.*                                                                              DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Court Judge William R. Wilson, Jr. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.    Why the record made before the Magistrate Judge is inadequate.

2.    Why the evidence proffered at the hearing before the District
       Judge (if such a hearing is granted) was not offered at the

          hearing before the Magistrate Judge.

3.      The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

    Clerk, United States District Court
    Eastern District of Arkansas
    600 West Capitol Avenue, Suite 402
    Little Rock, AR 72201-3325

## **DISPOSITION**

Plaintiff is a state prisoner seeking monetary and injunctive relief pursuant to 42 U.S.C. § 1983. He alleges numerous deprivations of his constitutional rights under the First, Sixth, Eighth and Fourteenth Amendments, including claims relating to conditions of confinement, denial of medical treatment, and religious discrimination. Defendants seek summary judgment, asserting that plaintiff failed to exhaust the prison administrative grievance system. Because the undisputed evidence supports defendant's motion, the undersigned recommends that this case be dismissed without prejudice.

Plaintiff is currently incarcerated at the Ouachita River Correctional Unit in Malvern, but the events giving rise to this litigation occurred at the East Arkansas Regional Max Unit (EARU Max) and the Defendants are Arkansas Department of Correction central office and EARU Max employees. Plaintiff's Complaint alleged that, when he was housed at the East Arkansas Regional

Max Unit in 2003, he was "refused my right to worship God as God demands I do in his gospel," and that he has been subjected to "retaliation, excessive noise, cruel and unusual punishment, unsanitary conditions, torture, and conspiratorial retaliations for the use of the inmate grievance procedure." Plaintiff's contentions include that he was made to drink dirty, sewage-smelling water, which caused him to suffer a staph infection, and wear clothing that had previously been worn by homosexuals who had puss-filled sores on their bodies. He adds that he has been beaten, denied food, ordered to the "hole" without due process, refused the opportunity to hold worship services, forced to listen to loud televisions, and exposed to men engaging in homosexual acts in his presence, all in retaliation for filing grievances.

The undersigned held a pre-jury evidentiary hearing in this matter on May 10, 2005, and Plaintiff presented evidence showing that he had been denied the opportunity to attend religious services while he was housed in "protective custody," or administrative segregation, and had been subjected to retaliation as to the conditions of his confinement for having filed grievances and testified against officers at the Arkansas Department of Correction. Plaintiff, having presented evidence showing a sufficient factual disagreement to require submission to a jury, as required by *Johnson v. Bi-State Justice Center*, 12 F. 3d 133, 135-36 (8th Cir. 1993), was therefore allowed to proceed with a jury trial, and counsel was appointed to represent him.

Defendants have filed a Motion for Summary Judgment (docket entry #71), accompanied by a Brief in Support, Statement of Facts, and two volumes of exhibits (docket entries ## 72-75). Plaintiff's counsel has now submitted his Response (docket entries ## 76-78) and the motion is ripe for disposition.

### I.  Standard of Review

The standards for summary judgment are well settled. In determining whether summary judgment should issue, the Court views the facts and inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

### II.  Failure to Exhaust Administrative Remedies

Defendants have moved for summary judgment arguing that this suit is barred by plaintiff's failure to exhaust administrative remedies as mandated by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  They also argue that the claim improperly seeks to impose liability under 42 U.S.C. § 1983 predicated on the theory of *respondeat superior*, fails to establish a genuine issue of material fact, and that they are entitled to qualified immunity.  Since this case can be decided on the issue of exhaustion of administrative remedies alone, the court need not decide Defendants's other arguments.

The PLRA requires a prisoner to exhaust administrative remedies before filing suit: "No

action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Congress's goal in enacting this statute was "to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 524-25, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Administrative remedies could eliminate the need for further litigation, weed out frivolous claims, or, at the least, create an administrative record for use in court. Id. at 525. "Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." *Id*. at 524 *(citing Booth v. Churner*, 532 U.S. 731, 741, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001)). "[A]n inmate must exhaust administrative remedies before filing suit in federal court . . . . If exhaustion was not completed at the time of filing, dismissal is mandatory." *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir.2003).

Section 1997e(a)'s requirement of exhaustion of administrative remedies is mandatory and applies to all inmate suits about prison life. *Porter*, 534 U.S. at 524, 532. Administrative remedies must be exhausted before the suit is filed, and in the case where they are not, dismissal is mandatory. *Johnson*, 340 F.3d at 627. There is no exception for claims alleging violations of constitutional rights--indeed, almost all § 1983 claims allege such violations. The Prison Litigation Reform Act mandates the exhaustion of administrative remedies in this case.

Here, the issue is whether Plaintiff fully exhausted his available administrative remedies as to his claims that he was denied the opportunity to attend chapel services while in protective custody. According to the exhibits provided by the defense, which appear to contain every piece of paper ever

generated by or about the Plaintiff, given their volume, Plaintiff filed two grievances concerning the alleged denial of worship opportunities. Plaintiff filled out a grievance form, numbered EAM 03-1927, on November 1, 2003, stating that "For approx. 371 days now at EARU I've been denied all right to worship God. I've not been allowed to attend one worship service since 10-29-02 at EARU! I am a Southern Baptist Minister!" He added that this was an emergency situation because the "result is nightmare, constipation, blood in stool, sleeplessness, forced viewing of tvs and homosexual acts! Physical and psychological torture daily!" (Defendants' Exhibit 1, Part D-5)

Reviewing the Warden's/Center Supervisor's Decision, Plaintiff's "Inmate Appeal," and the Deputy/Assistant Director's Decision, it appears that Plaintiff did eventually complete the appeal process on September 10, 2004, the date of Deputy Director Ray Hobbs' decision (Defendants' Exhibit 1, Part D-4). However, Plaintiff's Complaint was filed on January 9, 2004. Clearly, exhaustion of administrative remedies was not completed prior to filing.

The same is true for the second grievance that Plaintiff submitted on this issue, #EAM 04-00040. On December 31, 2003, Plaintiff submitted a grievance form stating, "I need my church services! I need to be allowed to worship God as he demands me to in his word! I'm Class 1C minimum security trusty! Who is in ad seg for asking to go to church!" Plaintiff received a Response to that grievance from Warden Greg Harmon dated March 14, 2004.[1] On it, Plaintiff wrote across the response "VOID" and "A.D. 97-08 time limit not met and I have already filed in U.S. District Court *Boyles v. Hobbs et al.*" Apparently Plaintiff forwarded this as his appeal of the grievance, because the Deputy/Assistant Director's Decision, dated June 18, 2004, contains a "Note" which

---

[1] Which Plaintiff says he received on April 3, 2004.

reads: "On your extension that you sent back to this office sign[ed] and dated, you wrote "**NO**" in big bold letters across the Grievance Extension form regarding the request for additional time. Therefore, your Grievance Appeal has been handled as such and forward back to you as you do not wish to agree to additional time from this level to respond to your allegations." [sic]

Clearly, Plaintiff did not fully exhaust his administrative remedies prior to filing suit, and was aware that he had not done so at the time he filed this litigation. Plaintiff has not provided, nor even argued, that he did fully exhaust any grievance on this issue. Instead, his counsel has argued in his response that administrative remedies were not "available" to him because prison officials prevented him from utilizing them. Plaintiff contends that the Eighth Circuit's decision in *Sergent v. Norris*, 330 F. 3d 1084 (8th Cir. 2003), noting that "prison officials' failure to timely respond to a grievance could be a basis for a prisoner to show that he exhausted 'available' administrative remedies," relieves him of the necessity to comply with the rule.

Upon review of the *Sergent* decision, which did not actually apply that rationale or holding to the case before it and instead affirmed the district court's dismissal of the case for failure to exhaust, the court is persuaded that the Defendants have correctly stated the law and its application to the matter at bar. There is no doubt that prison officials took a long time in which to respond to Plaintiff's grievances on this matter, much longer than the sixty-five working days contemplated by Arkansas Department of Correction Administrative Directive 97-08 (July 3, 1997). However, AD 97-08 also provides that this may be extended by a "valid extension agreed to" by the parties, which was sought by Inmate Grievance Supervisory Tiffanye Compton in both EAM 03-1927 and EAM 04-0040, noting that "the voluminous amount of Inmate Grievance Appeals that this level has received, along with various other matters, additional time is needed in order for your Grievance(s)

to be reviewed and responded to in a timely manner."[2]  Indeed, upon having been informed by the Plaintiff that he had already filed a lawsuit against them for these issues, the Defendants had very little incentive to timely respond to his grievances.

Exhaustion of grievance procedures promotes the policy of allowing complaints to be addressed by prison administrators before a prisoner initiates a federal lawsuit. Exhaustion may prompt corrective action and thereby remove the need for litigation, may filter out frivolous suits, and may at least create an administrative record, useful in resolving the matter if litigation ensues. *Porter* at 524-25. Thus, a primary purpose of exhaustion is to ensure that the plaintiff's institution has an opportunity to address the plaintiff's claims before they reach federal court, even if the institution has actual knowledge of the challenged prison conditions and even if the institution chooses not to rectify the conditions. *Id.*

Plaintiff submitted his first grievance on this issue on November 1, 2003.  Warden Greg Harmon's response is dated November 14, 2003, but Plaintiff has added a note with his appeal of that decision stating "Received on March 24, 2004 - Harmon backdating responses." Assuming that Plaintiff's contention is true, when he filed suit on January 9, 2004, he had not yet received even the first response to his first grievance from the Warden.  In fact, far fewer than even the sixty-five working days contemplated for completion of the administrative remedies process had passed before Plaintiff filed this cause of action.  By doing so, Plaintiff filed suit before reading the Warden's

---

[2] It is worthy of note that this "voluminous amount" of inmate grievances may well have referred only to Plaintiff's own submissions.  Many of Plaintiff's grievances contained in the exhibits accompanying the summary judgment motion bear sequential numbers, indicating that Plaintiff often filed multiple grievances at once.

decision, and certainly before giving the Arkansas Department of Correction defendants an opportunity to address the claims before he reached federal court. Plaintiff here has not only failed to exhaust his administrative remedies prior to filing suit, he illustrates the very rationale for the requirement of exhaustion. Therefore,

IT IS RECOMMENDED that Plaintiff's cause of action, be DISMISSED WITHOUT PREJUDICE.

DATED this  11  day of April, 2006.

_____
UNITED STATES MAGISTRATE JUDGE